ALBERT J. BORO, JR. (CA Bar #126657)
*ajboro@boro-law.com*
BORO LAW FIRM
345 Franklin Street
San Francisco, CA 94102
Telephone: (415) 621-2400
Facsimile: (415) 276-5870

Attorney for Defendant
FREDERICK CARL GAESTEL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br> v.<br><br>FREDERICK CARL GAESTEL,<br><br>   Defendant. | No. 23-cr-00345-TLT-2<br><br>DEFENDANT FREDERICK GAESTEL'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE IN SENTENCING<br><br>Date: March 28, 2025<br>Time: 10:30 a.m.<br>Court: Hon. Trina L. Thompson |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

I.   INTRODUCTION ........................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................. 2

III. SENTENCING GUIDELINES CALCULATION ......................................... 3

IV.  MOTION FOR DOWNWARD VARIANCE IN SENTENCING
     AND REQUEST FOR SENTENCE OF NO MORE THAN
     24 MONTHS' CUSTODY .............................................................................. 4

     A.   The Nature and Circumstances of the Offense
          Support a Downward Variance. .......................................................... 5

     B.   Considerations of the Seriousness of the Offense, Respect for
          the Law, and the Need for Deterrence and to Protect the Public
          from Further Crimes While Providing Treatment
          Support a Downward Variance. .......................................................... 6

     C.   Considerations of Avoiding Unwarranted Sentencing Disparities
          Support a Sentence of No More than 24 Months' Custody. ............. 7

     D.   Mr. Gaestel's Good Character and Personal History and
          His Extraordinary Post-Offense Rehabilitation
          Support a Significant Downward Variance. ...................................... 8

V.   CONCLUSION ............................................................................................. 11

## I.     **INTRODUCTION**

Defendant Frederick Gaestel respectfully submits this Sentencing Memorandum and Motion for a Downward Variance in Sentencing for his upcoming sentencing. This case presents the relatively rare occasion of personal transformation: where a person goes from being a college dropout a decade ago and a drifter, who was homeless and abusing drugs, to – following his pretrial release – returning to school while maintaining employment, finishing his bachelor's degree, and being accepted into a master's program. This was not the result of luck or sleight of hand but hard work and personal discovery.

While on pretrial release since September 2023, Mr. Gaestel has participated in weekly mental health counseling, worked five days a week at UPS (earning a promotion), completed the course work for his bachelor's degree, and has been accepted into the Master of Social Work graduate program for Fall 2025. During this time, he also received a certificate as a Certified Recovery Mentor (CRM). His goal is to enter the field of social work to assist persons suffering from mental health issues and drug addiction. As documented in the PSR, he has personally experienced trauma and substance abuse. Based on that lived experience and the formal training he has been pursuing, he should be able to guide others to address their mental health and addiction issues while avoiding the mistakes he has made.

Mr. Gaestel's extraordinary post-offense rehabilitation bears out the observation in the Presentence Investigation Report ("PSR") that he "appears to have shown some insight into what led to his participation in the instant offense, and he is making strides to start down a more positive path." PSR Sentencing Recommendation at ECF p. 30 (Dkt. #133). The many letters of support submitted with this memorandum show that Mr. Gaestel has the character to be a law-abiding, productive member of the community. A long period of incarceration would not benefit the community or Mr. Gaestel.

This is also a case where unwarranted sentencing disparities counsel in favor of a below Guidelines sentence. Two of Mr. Gaestel's co-defendants, who were also delivery drivers for a drug trafficking organization ("DTO") known as "The Shop," have been promised by the Government significantly more lenient sentences (no custody for one and 18 months or less for the other). Probation concludes that considerations of avoiding unwarranted sentencing disparities justifies "a significant downward variance" and recommends 36 months' custody. *Id*. The Government fails to address this

sentencing disparity in recommending a low-end Guidelines sentence of 51 months. *See* Gov. Sentencing Memo., filed Mar. 19, 2025, at 5 (Dkt. #145). Mr. Gaestel agrees with Probation that a significant downward variance is appropriate here, but he respectfully submits that a consideration of the Section 3553(a) sentencing factors supports a downward variance to no more than 24 months' custody.

## II.     STATEMENT OF FACTS

Mr. Gaestel pleaded guilty to Count One of the Indictment charging him with Conspiracy to Distribute a Mixture and Substance containing Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). Plea Agreement of F. Gaestel, filed Sept. 13, 2024, at ¶ 1 (Dkt. #116). Mr. Gaestel admitted that from June to mid-September 2023 he was a delivery driver for a DTO called "The Shop," which operated in the San Francisco Bay Area and distributed a variety of drugs, including methamphetamine pills and cocaine. *Id.* ¶ 2; PSR ¶¶ 9-10. The Shop communicated with its customers using Signal, an encrypted messaging app, and had a menu of drugs available to be ordered, comparing itself to the Door Dash app. Plea Agreement ¶ 2; PSR ¶¶ 10, 14. The drivers, like Mr. Gaestel and his co-defendants Matthew Sestak and Rory Rickey, had delivery routes on set nights to drop off the drug orders to customers and collect payment. *See, e.g.,* PSR ¶¶ 12-15 (Sestak), 23-27 (Gaestel) & 36-40 (Rickey).[1]

Mr. Gaestel had temporarily moved to the San Francisco Bay Area in late May 2023 from his rural homestead in Oregon to take over the delivery job held by his friend, co-defendant Mr. Sestak. PSR ¶¶ 49-50. Mr. Sestak had developed a serious substance abuse problem and went to stay temporarily at Mr. Gaestel's home in rural Oregon. *Id.* While in the Bay Area, Mr. Gaestel stayed at a house in Menlo Park that The Shop used as a stash house for controlled substances and watched over the drugs stored there. Plea Agreement ¶ 2; PSR ¶¶ 43-44.

Mr. Gaestel made two sales of fake Adderall pills, which contained methamphetamine, to the undercover agent ("UC"). Plea Agreement ¶ 2; PSR ¶¶ 24-27 & 31-32. On June 12, 2023, the UC sent a message to The Shop account on the Signal app requesting to purchase 1,000 fake Adderall pills and negotiating a price of $2,500. PSR ¶ 23. Two days later, on the night of June 14, 2023,

---

[1] For example, The Shop's menu stated: " 'SF deliveries are WEDNESDAY night 8-11p' / 'EAST BAY deliveries are THURSDAY night 8-11pm.' " PSR ¶ 21.

Mr. Gaestel, called "Driver F," met with the UC at a shopping center in San Mateo County and handed the UC a clear Ziploc bag with about 1,000 fake Adderall pills and collected $2,500 cash from the UC. Plea Agreement ¶ 2; PSR at ¶¶ 24-27. In late July 2023, the UC arranged another purchase of 1,000 fake Adderall pills from The Shop using the Signal app. *Id*. at ¶ 31. In the evening of July 26, 2023, the UC received a message: "Our driver Franz will be delivering your order tonight in a white Subaru Forester with a cute black/white puppy." *Id*. Later that evening, Mr. Gaestel (with his small black and white dog in tow) delivered 1,000 fake Adderall pills to the UC at the same shopping center in San Mateo County, and the UC handed him $2,500. Plea Agreement ¶ 2; PSR ¶ 32.

Mr. Gaestel was arrested at the Menlo Park stash house on September 13, 2023. *Id*. at ¶¶ 43-44. At that house, the agents seized approximately 7 kilograms of cocaine, multiple Ziploc bags containing fake Adderall pills with a combined net weight of 1,773 grams that tested positive for methamphetamine, and a square brick of powder with a net weight of 990.7 grams that tested positive for fentanyl. PSR ¶¶ 43-44. The square brick of fentanyl was labeled "fentanyl" and was inside a small zipper-closed, carry-on bag that was labeled "DO NOT OPEN" that was inside a brown cardboard box labeled "DO NOT OPEN". Plea Agreement ¶ 2; PSR ¶ 43. Based on the drugs in the stash house, the parties agreed that for purposes the Sentencing Guidelines, Mr. Gaestel was responsible for at least 6,000 kilograms Converted Drug Weight. Plea Agreement ¶ 2; PSR ¶ 46.

### III. SENTENCING GUIDELINES CALCULATION

Mr. Gaestel agrees with the Sentencing Guidelines calculation in the Plea Agreement and the PSR (paragraphs 51 to 61 and n.1):

1. Base Offense Level (Offense Level 32, but reduced by 2 levels): **30**
   (U.S.S.G. § 2D1.1(a)(5) & (c)(4))

2. Minor Role Adjustment **-2**
   (U.S.S.G. § 3B1.2(b)

3. Acceptance of Responsibility **-3**
   (U.S.S.G. § 3E1.1(a) & (b))

4. Group Disposition[2] **-2**

---

[2] The Group Disposition downward departure is permitted under section 5K2.0 because the Guidelines do not identify the circumstances of a group resolution of charges, which saves the Government from expending the significant

(U.S.S.G. § 5K2.0(a)(2)(B))

5. Total Offense Level                                                                                                      **23**

The bases offense level applicable to at least 3,000 kilograms but less than 10,000 kilograms of Converted Drug Weight is 32, U.S.S.G. § 2D1.1(c)(4), but it is reduced two level because the parties and Probation agree Mr. Gaestel should receive a mitigating role adjustment.  *See* U.S.S.G. § 2D1.1(a)(5) ("if (A) the defendant receives an adjustment under § 3B1.2 (Mitigating Role); and (B) the base offense level under subsection (c) is (i) level 32, decrease by 2 levels").  The PSR concludes that a 2-level downward departure for minor role is appropriate because Mr. Gaestel "was a minor participant in the DTO as he served as a delivery driver."  PSR ¶ 55; *see* U.S.S.G. § 3B1.2(b); Plea Agreement ¶ 7.

Mr. Gaestel agrees with the PSR that he is a Criminal History Category II.  PSR ¶ 66.  The resulting recommended sentencing range for an Offense Level of 23 and CHC II is 51 to 63 months under the Guidelines.

## IV. MOTION FOR DOWNWARD VARIANCE IN SENTENCING AND REQUEST FOR SENTENCE OF NO MORE THAN 24 MONTHS' CUSTODY.

Section 3553(a) directs the Court to " 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing."  18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).  "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."  *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam) (emphasis in original).  A consideration of the 3553(a) sentencing factors demonstrates that a sentence sufficient, but not greater than necessary, to meet sentencing goals is 24 months' custody with three years of supervised release.[3]

Probation agrees a downward variance is appropriate in this case and has recommended a sentence of 36 months.  PSR Sentencing Recommendation at ECF pp. 28-30.  Probation concluded a downward variance is justified in view of the "trauma he has experienced, his own prior struggle with

---

resources involved in a multi-defendant conspiracy trial.  *See United States v. Mastronardo*, 22 F. Supp. 3d 490, 494-98 (E.D. Pa. 2014) (upholding 2-level downward departure under section 5K2.0 for global settlement avoiding two trials in a 13-defendant case where the Government requests the departure to facilitate settlement).

[3] Mr. Gaestel agrees with the Government's request for forfeiture of the $16,137.00 in cash seized at 74 Henderson Place and $3,800.00 seized from his car.  (Plea Agreement ¶ 11.)

DEFENDANT FREDERICK GAESTEL'S SENTENCING MEMORANDUM                                                                                 4

drug use, his limited role in the drug conspiracy," and his success during pretrial release, including being "gainfully employed throughout his period of supervision, and . . . all drug tests have been negative." *Id*. at ECF p. 30.  Importantly, Probation observes that Mr. Gaestel "appears to have shown some insight into what led to his participation in the instant offense, and he is making strides to start down a more positive path." *Id*.  Probation also notes the sentencing disparity from the sentences the Government has supported for the other delivery drivers as supporting a "significant downward variance." *Id*.

The Government, while acknowledging Mr. Gaestel's progress on pretrial release, does not directly address Probation's analysis supporting a downward variance.  Gov. Sentencing Memo. at 5.  It instead recommends a low-end Guidelines sentence of 51 months, which it had agreed to do under the plea agreement.  *Id*.  Mr. Gaestel agrees with Probation that a significant downward variance is appropriate in this case, but he believes a careful consideration of the Section 3553(a) supports a downward variance to no more than 24 months' custody.

**A.   The Nature and Circumstances of the Offense Support a Downward Variance.**

Under section 3553(a)(1), the Court is directed to consider the "the nature and circumstances of the offense," which includes the circumstance of how and why the defendant committed the offense.  Mr. Gaestel was only involved for the last few months of the conspiracy, from late May 2023, when he came to the San Francisco Bay Area, until his arrest on September 13, 2023.  *Id*. ¶¶ 43-44, 49.  He got involved with the conspiracy due to "feelings of desperation" and "failing" and that "nothing was going right for him at the time."  *Id*. at ¶ 50.  He took the place of his friend, co-defendant Mr. Sestak, who was suffering from severe drug abuse, and went up to Mr. Gaestel's rural home to dry out.  *Id*. ¶¶ 49-50.  Consistent with this timeline, Mr. Gaestel's two deliveries to the UC were in June and July 2023; the earlier deliveries to the UC were made by his co-defendant Mr. Sestak.  *Compare id*. ¶¶ 12-15, 18-20 (Sestak deliveries on Mar. 29 & Apr. 14, 2023), *with* ¶¶ 23-27, 31-32 (Gaestel deliveries on June 12 & July 26, 2023).

Mr. Gaestel's role in the conspiracy was minor.  He was a delivery driver and resided at the Menlo Park stash house, which gave him free lodging while he was in the Bay Area and the DTO someone to watch the drug supplies.  The Government did not allege that he directed the organization,

procured drug supplies for the DTO, developed customers, or set prices. Under the Government's characterization of the facts, his role was similar to a delivery driver for an app " 'like Door Dash.' " Plea Agreement ¶ 2; Gov. Sentencing Memo. at 3. Hence, the PSR's conclusion that he "was a minor participant in the DTO as he served as a delivery driver." PSR ¶ 55. This sentencing factor supports a downward variance.

**B.     Considerations of the Seriousness of the Offense, Respect for the Law, and the Need for Deterrence and to Protect the Public from Further Crimes While Providing Treatment Support a Downward Variance.**

The requested sentence of no more than 24 months' custody is "sufficient, but not greater than necessary," to comply with the needs of sentencing to address the four factors Congress set out in Section 3553(a)(2). Those factors require a balancing of considerations so that the sentence reflects the seriousness of the offense, deters criminal conduct, and protects the public, while providing the defendant with needed training and treatment. *See* 18 U.S.C. § 3553(a) & (a)(2)(A)-(D).

First, a sentence with imprisonment reflects the seriousness of the offense and respect for the law, but it need not be lengthy imprisonment to satisfy this sentencing factor. *See* 18 U.S.C. § 3553(a)(2)(A). Here, Mr. Gaestel's crime was nonviolent, and there are no allegations firearms were stored at either house controlled by The Shop, or any conspirators were armed or involved in any violence. Also, there is evidence The Shop attempted to avoid the distribution of fentanyl and the serious harm associated with it because the only package of fentanyl seized during the searches of the two houses was labeled "fentanyl" and "was found in a small, zipper-closed carry-on bag that was labeled "DO NOT OPEN," and which was inside of a brown cardboard box labeled "DO NOT OPEN." Plea Agreement ¶ 2; PSR ¶ 43.

Second, a sentence of 24 months' custody sends a message of deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). It is significant prison time for persons, such as Mr. Gaestel, who play minor roles in a drug conspiracy, such as delivery drivers. The prospect of prison, even for a minor role, deters criminal conduct.

Third, the requested sentence is more than sufficient to protect the public from further crimes by Mr. Gaestel. *See* 18 U.S.C. § 3553(a)(2)(C). As the PSR recognizes, Mr. Gaestel has "shown

some insight into what led to his participation in the instant offense" and "is making strides to start down a more positive path." PSR Sentencing Recommendation at ECF p. 30. Since his pretrial release, he has remained gainfully employed and has resumed his studies for a bachelor's degree, which he completed this month. *Id*. at ¶¶ 80, 88-90. Mr. Gaestel's interaction with the criminal justice system from these events has resulted in him making changes in his life, such that he will not pose a danger to the community.

Fourth, Congress's direction for the sentence to address the defendant's need for educational/vocational training and treatment is satisfied by a downward variance to no more than 24 months' custody. *See* 18 U.S.C. § 3553(a)(2)(D). Mr. Gaestel started mental health counseling just prior to the events here and resumed it following his arrest and return to Oregon in September 2023. Declaration of Albert J. Boro, Jr., filed concurrently herewith ("Boro Decl."), Ex. C (Letter of Lisa Jennings, LCSW, MAC, CADCIII). That weekly mental health counseling will most likely not be available at BOP. A short custodial sentence supports his continued access to that needed treatment. As discussed in Section IV.D, *infra*, Mr. Gaestel has been studying to provide mental health counseling to assist individuals with mental health and addiction issues. He has recently been accepted into a Master of Social Work graduate program for Fall 2025. *See* Boro Decl. Ex. F. Mr. Gaestel's ability to pursue these studies and that career requires that his custody time not be lengthy. Addressing this educational need promotes the rehabilitation of Mr. Gaestel and the protection of the community from possible future crime by him. It will also benefit the community as he develops the skills to help others suffering from mental health and addiction issues.

**C.    Considerations of Avoiding Unwarranted Sentencing Disparities Support a Sentence of No More than 24 Months' Custody.**

The PSR recognizes that the need to avoid unwarranted sentencing disparities with his co-defendants justifies a "significant downward variance." PSR Sentencing Recommendation at ECF p. 30; *see* 18 U.S.C. § 3553(a)(6). Probation acknowledges that his fellow delivery drivers Mr. Sestak and Mr. Rickey face little or no custody time. The Government has agreed that Mr. Sestak may participate in the Conviction Alternatives Program ("CAP"), which if he succeeds will likely result in no custody (or time-served); and Mr. Rickey has had his sentencing deferred for a year, allowing

him to pursue rehabilitation prior to sentencing, and received a promise of a Government recommendation of no more than 18 months' custody. PSR Sentencing Recommendation at ECF p. 30; *see* PSR ¶¶ 5-6. The drug deliveries they made the UC were not materially different from the two made by Mr. Gaestel. *Compare* PSR ¶¶ 15 & 20 (Sestak deliveries of $2,200 of cocaine and $4,000 of fake Adderall pills), and ¶¶ 33, 38-40 (Rickey delivery of $6,000 of fake Adderall pills), *with* ¶¶ 26 & 32 (Gaestel's two deliveries of $2,500 each of fake Adderall pills).

The requested sentence of no more than 24 months' custody is sufficient but not great than necessary to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). It takes account of Mr. Gaestel having a Criminal History Category II due to his prior conviction of robbery: first degree, whereas his co-defendants had no criminal history points: Mr. Gaestel would receive 24 months' custody, whereas Mr. Rickey at most 18 months and Mr. Sestak zero months. Mr. Gaestel's living at The Shop's stash house and the inclusion of the quantities of drugs present there in his Guidelines calculation, does not justify a greater difference in sentences where he had been financially distressed and needed a place to stay in the Bay Area. Also, there is no evidence Mr. Gaestel's conduct was different in kind from the acts of other delivery drivers for The Shop, such as placing suspected drugs in his car for deliveries or making several deliveries in a night. *See* PSR ¶¶ 21, 29-30, 32, 39. His conduct is similar to that of his co-defendant delivery drivers, and a sentence of no more than 24 months' custody is necessary to avoid unwarranted sentencing disparities.

**D.     Mr. Gaestel's Good Character and Personal History and His Extraordinary Post-Offense Rehabilitation Support a Significant Downward Variance.**

The sentencing factors of the "history and characteristics of the defendant" support a significant downward variance. *See* 18 U.S.C. § 3553(a)(1). The PSR recognizes that Mr. Gaestel has experienced trauma, homelessness, and substance abuse. PSR ¶¶ 73-74, 78, 81, 83-86. Following his arrest in this case, he has made decisions to change the direction of his life and avoid further criminal activity. PSR Sentencing Recommendation at ECF pp. 29-30. The connective tissue between these disparate phases of Mr. Gaestel's life is his good character.

The letters of support from Mr. Gaestel's family and friends show that, notwithstanding his bad decision to become a delivery driver for The Shop, his character is generally one of kindness,

empathy, and concern for others. His mother, sister, and brother-in-law attest to his deep capacity for empathy for others and his thoughtfulness, intelligence, patience, and reserved nature. Boro Decl. Ex. A (letters of Mary T. Gaestel, Mary K. Gaestel & Eric Policastro). His friends talk about how he "aims to improve himself and the world," is "respectful," "empathetic," "kind[], gentle," "considerate and dependable," "upstanding," "compassionate," and is often "helping elderly neighbors," and they describe the positive effect he has had on their lives. Boro Decl. Ex. B (collecting letters of support submitted by friends). These letters of support show that Mr. Gaestel has the character to change his behavior and be a law-abiding, contributing member of the community. They militate in favor of less custodial time.

A consideration of Mr. Gaestel's personal history also supports a downward variance. The PSR shows that Mr. Gaestel grew up in a loving and supportive home, but the mental health struggles and heroin addiction of his older brother, Billy, who Mr. Gaestel looked up to, caused Mr. Gaestel psychological damage that manifested itself in his decisions leading up to his arrest in this case. PSR ¶¶ 72-74 & 81. The PSR reports that Billy's mental health breakdowns and overdoses resulted in emergency trips to the hospital and a younger Mr. Gaestel left crying on the steps of the family home. *Id*. at ¶ 81. The letters of support from Mr. Gaestel's mom, who is 76 and suffers from chronic obstructive pulmonary disease (COPD), *id*. at ¶ 72, and sister and her husband discuss the trauma suffered by Mr. Gaestel. Boro Decl. at Ex. A (letters of Mary T. Gaestel, Mary K. Gaestel & Eric Policastro). They attest to the large influence Billy had on Mr. Gaestel and the trauma the family, and especially Mr. Gaestel, experienced from his mental health breakdowns and severe addiction to heroin. *Id*. Billy became a homeless transient and fell off a freight train and died when he was 27 and Mr. Gaestel was 22. *See id*.; PSR ¶ 72-73 & 81.

Mr. Gaestel, who at that time was in college at Montclair State University, studying for a bachelor's degree in music therapy, dropped out. Boro Decl. Ex. A. He became homeless and traveled around the country and abused hallucinogens. PSR ¶¶ 78 & 86. It was during this period, that he lent his car to fellow workers at an illegal marijuana grow in Mendocino County, who asked to use it to drive up to the property to retrieve their personal property and obtain payment for wages owed. *Id*. at ¶ 64. However, those individuals robbed and murdered the owner of the grow. *Id*.

Mr. Gaestel was originally charged with murder, but he was not present at the time of the killing and stated he did not know their plans; the murder charges were dismissed and he pleaded guilty to robbery. *Id*. While serving prison time on that charge, Mr. Gaestel again experienced trauma and mental health distress. *Id*. at 74, 81, 83-85.

Following his arrest in this case, Mr. Gaestel has taken extraordinary efforts to change the trajectory of his life. His drug tests during pretrial release have all been negative. PSR ¶ 86. He has attended weekly mental health counseling sessions. *Id*. at ¶ 85; Boro Decl. Ex. C (letter of Lisa Jennings, LCSW, MAC, CADCIII). Prior to his arrest in this case, he had not held a steady job since dropping out of college after his brother's death and becoming homeless. PSR ¶ 78. He did a variety of work: labor/handy work, worked on commissions for an organic produce delivery company, and had other short-term jobs, including catering work, highway cleanup work, and bar tending. *Id*. at 91. Following his arrest in this case, he obtained a job working the night shift at UPS. *Id*. at 90. He has worked there the last year and a half and has been promoted to a part-time supervisor on the night shift. Boro Decl. Ex. D (letters of Christopher Aitken & Brandon Mcknight). His supervisors describe Mr. Gaestel as hard-working, "thorough and professional," and having "a desire to do the right thing for the right reason." *Id*.

After having dropped out of college a decade before, Mr. Gaestel returned to his studies. And he did so while working five nights a week at UPS. He has been studying to become a counselor for individuals with mental health and drug addiction issues. *See* Boro Decl. Ex. C (letter of Lisa Jennings, LCSW, MAC, CADCIII). This month (March 2025) he completed successfully his coursework at Eastern Oregon University for a bachelor's degree in Interdisciplinary Studies, with minors in Psychology and Music. PSR at ¶ 88; Boro Decl. Ex. A (letter of Mary K. Gaestel). During his pretrial release he has trained and earned his certificate as a Certified Recovery Mentor (CRM) through the Mental Health and Addiction Certificate Board of Oregon. PSR ¶ 89; Boro Decl. Ex. E (Certificate for Certified Recovery Mentor issued to F. Gaestel). Finally, he was just admitted this month into the Master of Social Work graduate program at Eastern Oregon University for Fall 2025. Boro Decl. Ex. F (Admissions Email from Eastern Oregon University, dated Mar. 17, 2025).

Through perseverance and hard work, Mr. Gaestel has changed the direction of his life 180 degrees. He has gone from being a college dropout and homeless to finishing his bachelor's degree, obtaining a professional certification, and being accepted into a Master of Social Work graduate program. The PSR's conclusion that "he is making strides to start down a more positive path" is fully supported by his exceptional post-offense rehabilitation. *See* PSR Sentencing Recommendation at ECF p. 30.

\* \* \*

In sum, the Section 3553(a) sentencing factors, viewed as a whole, support the conclusion that a sentence of no more than 24 months' custody is "a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." 18 U.S.C. § 3553(a). The PSR recognizes that Mr. Gaestel has kept all court appearances and is not a flight risk or danger to the community, and is a good candidate for voluntary surrender. PSR Sentencing Recommendation at ECF p. 30. The Court should set a self-surrender date for Mr. Gaestel that is at least 60 days out from sentencing to allow sufficient time for the U.S. Marshal to designate a facility for Mr. Gaestel to report to. Mr. Gaestel also agrees with Probation's recommendation that he participate in BOP's Residential Drug Abuse Treatment Program ("RDAP"). *Id*.

V.  **CONCLUSION**

For the foregoing reasons, Mr. Gaestel respectfully requests that the Court sentence him to a term of custody of no more than 24 months and a supervised release term of three years.

Dated: March 24, 2025

Respectfully Submitted:
BORO LAW FIRM

*/s/ Albert J. Boro, Jr.*
ALBERT J. BORO, JR.
Attorney for Defendant
FREDERICK CARL GAESTEL