CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

DANIEL PASTOR (CABN 297948)
Assistant United States Attorney

    450 Golden Gate Ave., Box 36055
    San Francisco, California 94102
    Telephone: 415.436.7200
    Fax: 415.436.7234
    Email: daniel.pastor@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>RORY SPENCER RICKEY, ,<br><br>    Defendant. | NO. 3:23-CR-00345-TLT-4<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:  February 13, 2026<br>Time:  11:00 A.M.<br>Judge:  Hon. Trina L. Thompson |

## I.    INTRODUCTION

    Rory Spencer Rickey (age 26) pleaded guilty to Count Four of the captioned indictment charging him with Distribution of a Mixture and Substance Containing Methamphetamine in September 2024. PSR ¶ 3. Rickey was charged and arrest for his role as a delivery driver for the drug organization known as "The Shop" that supplied a broad variety of controlled substances to customers across the San Francisco Bay Area. Rickey worked for co-defendant Natalie Gonzalez and distributed methamphetamine pills and other drugs to customers that placed drug orders through the encrypted app Signal. The organization had a $300 minimum for Bay Area delivery orders and for mail orders.

GOV. SENTENCING MEMO
3:23-cr-00345-TLT-4

1

Gonzalez explained to a DEA undercover agent that the group's customer base was "a lot of students and young professionals" and that the organization's drivers drove regular weekly delivery routes in different parts of the Bay Area. In his plea agreement, Rickey admitted that he sold 4,000 fake Adderall pills containing methamphetamine to a DEA undercover agent on August 24, 2023. Those pills had a net weight of roughly 1,224 grams of mixture and substance containing methamphetamine. Rickey further admitted in his plea agreement that he knew that the pills he sold to the undercover agent were not prescription Adderall medication and that he knew that the pills contained a federally controlled substance. Dkt. 120 at 2.

## II.    SENTENCING GUIDELINES CALCULATIONS

As reflected in the plea agreement, the parties calculated the Sentencing Guidelines for the defendant as follows:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2D1.1(a)(5), (c)(7) | | 30 |
| b. | Specific offense characteristics | | 0 |
| c. | Minor Role Adjustment, U.S.S.G. § 3B1.2(b) | | -2 |
| d. | Acceptance of Responsibility, § 3E1.1 | | -3 |
| e. | Zero-Point Offender, § 4C1.1 | | -2 |
| f. | Group Disposition, U.S.S.G. § 5K2.0(a)(2)(B) | | -2 |
| g. | Total Offense Level: | | 21 |

*See* Dkt. 194 ¶¶ 52-61. U.S. Probation agrees with the parties' sentencing guidelines calculation provided that the Court agrees to grant a two-level reduction for the Global Disposition. The government agrees with U.S. Probation that the defendant has a Criminal History Category (CHC) of I. PSR ¶¶ 63-68. For offense level 23 and CHC II, the guidelines range is 37-46 months. In the parties' plea agreement, the government agreed to recommend a sentence of no more than 18 months in custody and to defer the defendant's sentencing for at least one year to permit the defendant to finish his college degree. Dkt. 120 at 7. The government also agreed to dismiss the drug conspiracy charge against the defendant at sentencing. *Id.* at 8.

\\

\\

GOV. SENTENCING MEMO                    2
3:23-cr-00345-TLT-4

## III.    DISCUSSION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence; and to protect the public.  18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Sentencing Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).  Section 3553(a) sets forth the factors that Congress has directed courts to consider in determining a sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims.  18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991.

### A.    The Criminal Conduct

The drug organization in this case known as "The Shop" functioned as an online drug delivery service for a customer base of young Silicon Valley professionals and students (PSR ¶ 28). The group profited by distributing illegal drugs to its young-adult customers who the group encouraged to order in bulk: "We have a $300 minimum order for postal shipments and Bay Area delivery." PSR ¶¶ 10-12, 29. The group also profited by providing a steady flow of illegal drugs through pre-arranged weekly deliveries made by the Shop's drivers (of whom Rickey was one).  *Id.*

During the investigation, Rickey met with an undercover agent (UC) in the defendant's vehicle for an arranged drug delivery on August 24, 2023, in the parking lot of a Target in East Palo Alto. PSR ¶ 39.  The UC asked Rickey if he would be driving for The Shop on a regular basis, and Rickey said that he would be and that he planned on staying in the area until January 2024.  PSR ¶ 40. Rickey told the UC that he was driving the "smaller routes" in the South Bay and nearby.  *Id.*  Rickey also told the UC that he was a student at UC San Diego and planned to return to school there.  *Id.*

The UC asked Rickey how he began working for the "The Shop," and Rickey replied that he knew the "right people."  According to Rickey, the group was practicing a form of "harm prevention" because the group had friends who had overdosed from drugs.  PSR ¶ 40.

GOV. SENTENCING MEMO                    3
3:23-cr-00345-TLT-4

During the vehicle meeting—which was recorded by the Drug Enforcement Administration (DEA)—Rickey gave the UC a paper bag that had four clear plastic bags containing roughly 4,000 orange pills with the markings "b 974" and "30" (PSR ¶ 39), which is consistent with the appearance of prescription Adderall medication.  Rickey further told the UC that things had been hectic because customers were ordering a lot for the Burning Man festival.  *Id.*

Th UC attempted to pay for the 4,000 Adderall pills but informed Rickey that the payment was not being accepted.  PSR ¶ 40.  Rickey then stated he would call "them," and placed a call to Natalie Gonzalez through the Signal app.  PSR ¶ 41.  After some back and forth, Gonzalez told Rickey and the UC that it was okay for the UC to take the Adderall pills and send payment in Bitcoin once the UC returned home.  *Id.*

On September 13, 2023, DEA agents executed federal search and arrest warrants at the group leader Natalie Gonzalez's residence in East Palo Alto.  Agents arrest Rickey as he was exiting a door at the rear of the residence. PSR ¶ 42.

### B.    Other 3553 Sentencing Factors

The defendant's parents divorced in 2003 when he was four years old.  PSR ¶ 71. Throughout his childhood, he moved around a lot and felt that he lacked residential stability.  PSR ¶¶ 71-72.  The defendant was a good high school student, graduated near the top of his class, and was admitted to UC San Diego.  PSR ¶ 71.  The defendant was diagnosed with depression and anxiety disorders in 2022. He has struggled with mental health and excessive alcohol episodes while on pretrial release.  PSR ¶¶ 80, 83-84.  The defendant reports that his relationship with his parents has improved during his period of pretrial release.  The defendant has been living most recently with his father; however, the father plans to sell his house in Los Angeles County and move out of the state.  PSR ¶¶ 77.

The government recognizes that the defendant was one of the less culpable members of the drug conspiracy in this case. However, he distributed large amounts of dangerous drugs for a drug organization that was operating as a large-scale drug delivery service. The defendant was aware of the group's business model and the types of dangerous drugs that it sold.  He voluntarily sought work with the group to earn money after hearing about it from roommates.  The Court sentenced the leader of the

GOV. SENTENCING MEMO                    4
3:23-cr-00345-TLT-4

conspiracy to 50 months in prison and the manager of the group's drug stash house to 48 months in prison.  A third defendant who like Rickey was a drug delivery driver for the group was admitted to the Conviction Alternatives Program and is expected to receive a non-custodial sentence.  PSR ¶ 7.  Unlike Rickey, that defendant had a severe drug use problem and had to stop working for the drug group due to addiction issues. While the Court must weigh each defendant's personal circumstances individually at sentencing, the government notes that there are many defendants in this District and across the nation who receive lengthier sentences for similar offense conduct (*see e.g.*, PSR ¶¶ 108-09) than the sentence the government recommends here pursuant to the plea agreement.

**IV.    CONCLUSION**

In accordance with the parties' plea agreement, the United States respectfully recommends that the Court sentence the defendant to 18 months in custody, three years of supervised release, and a special assessment of $100.

DATED:  February 3, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/*
DANIEL PASTOR
Assistant United States Attorney

GOV. SENTENCING MEMO                    5
3:23-cr-00345-TLT-4