CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

DANIEL PASTOR (CABN 297948)
Assistant United States Attorney

> 450 Golden Gate Ave., Box 36055
> San Francisco, California 94102
> Telephone: 415.436.7200
> Fax: 415.436.7234
> Email: daniel.pastor@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. 3:23-CR-00345-JSC |
| Plaintiff, | ) |
| | ) **UNITED STATES' SENTENCING** |
| v. | ) **MEMORANDUM** |
| | ) |
| MATTHEW THOMAS SESTAK, | ) Date:  March 12, 2026 |
| | ) Time:  3:00 P.M. |
| Defendant. | ) Judge:  Hon. Jacqueline Scott Corley |
| | ) |

## I.    INTRODUCTION

Matthew Thomas Sestak (age 45) pleaded guilty to Count Two of the captioned indictment charging him with Distribution of a Mixture and Substance Containing Methamphetamine.  PSR ¶ 3. Sestak was charged and arrest for his role as a delivery driver for a drug organization known as "The Shop" that supplied a broad variety of controlled substances to customers across the San Francisco Bay Area.  Sestak worked for the group's leader Natalie Gonzalez and distributed methamphetamine pills and other drugs to customers who placed drug orders through the encrypted app Signal.  The Shop had a $300 minimum for Bay Area delivery orders and for mail orders.  Its customer base consisted of students and young professionals.

GOV. SENTENCING MEMO
3:23-cr-00345-JSC

1

On March 29, 2023, while working for "The Shop," Sestak sold cocaine to a man he later learned was an undercover DEA agent. On or about April 14, 2023, Sestak sold 2,000 fake Adderall pills containing methamphetamine to the same undercover agent in the parking lot of a shopping center in San Mateo County. In his plea agreement, Sestak admitted that he knew at the time that the pills contained methamphetamine or some other federally controlled substance. Dkt. 107 at 3. The pills were tested at a DEA laboratory and found to have a gross weight of 670.7 grams with a net weight of 24.1 grams of pure methamphetamine. PSR ¶ 22.

## II. SENTENCING GUIDELINES CALCULATIONS

As reflected in the plea agreement, the parties calculated the Sentencing Guidelines for the defendant as follows:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2D1.1 | | 26 |
| b. | Specific offense characteristics | | 0 |
| c. | Minor Role Adjustment, U.S.S.G. § 3B1.2(b) | | -2 |
| d. | Acceptance of Responsibility, § 3E1.1 | | -3 |
| e. | Zero-Point Offender, § 4C1.1 | | -2 |
| f. | Group Disposition, U.S.S.G. § 5K2.0(a)(2)(B) | | -2 |
| g. | Total Offense Level: | | 17 |

*See* Dkt. 107. U.S. Probation disagrees with the parties' guidelines calculation. U.S. Probation calculates the defendant's total offense level is OL 30 based on weight of the pills as a mixture and substance containing methamphetamine. PSR ¶ 29. The government agrees with U.S. Probation that the defendant has a Criminal History Category (CHC) of I. PSR ¶¶ 41-46. Based on the parties' guidelines calculation, the defendant's guidelines' range is 24-30 months. The government stands by this calculation in its plea agreement. As calculated by U.S. Probation, the defendant's guideline range is 46-57 months. PSR ¶ 84. In the parties' plea agreement, the government promised that if the defendant successfully completed CAP, it would recommend a non-custodial or time-served sentence Dkt. 107 at 7. The government now recommends a time-served sentence in accordance with the agreement.

III.    DISCUSSION

The Court must impose a sentence that is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence; and to protect the public.  18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Sentencing Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).  Section 3553(a) sets forth the factors that Congress has directed courts to consider in determining a sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims.  18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991.

A.      The Criminal Conduct

The drug organization in this case known as "The Shop" functioned as an online drug delivery service for a customer base of young Silicon Valley professionals and students.  The group profited by distributing illegal drugs to its young-adult customers who the group encouraged to order in bulk.  The group also profited by providing a steady flow of illegal drugs through pre-arranged weekly deliveries made by the Shop's drivers of whom Sestak was one.

On March 29, 2023, Sestak sold cocaine to a man that he later learned was an undercover DEA agent (UC). The drug sale had been coordinated in advance through a chat group on the encrypted app Signal.  PSR ¶¶ 13-16.  The cocaine purchased by the UC for $2,200 was later tested at a DEA lab and found to have a weight of 56 grams of which 50 grams was pure cocaine. PSR ¶ 17. Sestak told the UC that the group had a full return policy and that if the UC did not sell all the cocaine, he could return or exchange what he did not sell.  *Id.*  Sestak also asked the UC if the UC had the "full menu," to which the UC replied that he did not. Sestak informed the UC that before providing the full menu, he had to check "with the girl who makes the call," referring to the group's leader Gonzalez.  *Id.*

On or about April 14, 2023, Sestak sold 2,000 fake Adderall pills containing methamphetamine to the UC in the parking lot of a San Mateo County shopping center for $4,000.  PSR ¶ 22. The drug sale

was coordinated in advance through the chat group on the encrypted app Signal.  PSR ¶¶ 19-21.  The pills resembling prescription Adderall medication were later tested at a DEA lab and determined to be a mixture and substance containing methamphetamine with a weight of 670.7 grams that contained 24.1 grams of pure methamphetamine.  PSR ¶ 22.

### B.    Other 3553 Sentencing Factors

The defendant had a difficult childhood in which he began drinking alcohol at age 11. PSR ¶ 70. He and his brother also experienced physical abuse from their father.  PSR ¶ 54.  The defendant became involved with the drug group in this case after purchasing ketamine from the organization.  PSR ¶ 73. Based on the investigation, the government believes that the defendant's drug use worsened during the offense period due to his easier access to drugs (*id.*) and became such a problem that the defendant took a break from working for the organization.  Although the defendant has continued to struggle with substance abuse while participating in CAP, he appears to have maintained sobriety since June 2025. PSR ¶ 75.

## IV.    CONCLUSION

In accordance with the plea agreement and based upon the defendant's successful completion of the CAP program, the United States respectfully recommends that the Court sentence the defendant to time served, three years of supervised release, and a special assessment of $100.

DATED:  March 5, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/*
DANIEL PASTOR
Assistant United States Attorney